LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. Patty Smith[1] was in the seventh grade when she confided to an older friend that Tommy Jones, her mother’s live-in boyfriend, had been sexually abusing her. The friend, who was also Jones’s younger sister, contacted the authorities. Patty was given a pelvic exam at Baptist Memorial Hospital and at the Memphis Sexual Assault Center. Both exams confirmed that Patty had been sexually penetrated. Patty was removed from Jones’s home and was eventually placed in foster care because her mother returned to live with Jones.
¶ 2. A jury was empaneled on March 21, 2005, and the trial court, Assistant District Attorney Robert Kelly and Jones’s attorney, David Walker, conducted voir dire. After voir dire the parties retired to chambers to select the jury in the presence of Joe Reid, Panola County Circuit Court Clerk. The State used one peremptory challenge and tendered a panel of twelve jurors. Jones then struck juror 18, juror 20, juror 29, juror 39, juror 63, and juror 65. Citing Georgia v. McCollum, 505 U.S. *570 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the State challenged the peremptory strikes because Jones had stricken five Caucasian males from the jury.
¶ 3. Jones was convicted of statutory rape and sexual battery and sentenced to serve terms of fifteen years and twenty years, respectively. It is from this conviction that Jones appeals, arguing five points of error, which we quote verbatim:
(1) the trial court erred by finding that the State had made a prima facie case of racial discrimination regarding the peremptory strikes exercised by the Defendant; (2) the trial court erred by not making an on-the-record finding regarding the race-neutrality of the reasons offered by the Defendant for those peremptory strikes; (3) the trial court erred by finding that the reasons offered by the Defendant for his peremptory strikes were not racially neutral; (4) even if the reasons offered by the Defendant were not racially neutral, the trial court erred by disallowing the Defendant his original peremptory strikes because the State failed to carry its burden to demonstrate pretext; (5) the trial court erred by disallowing the Defendant to consider the entire jury panel for peremptory strikes, after the trial court had disallowed certain earlier strikes under McCollum.
Additional facts will be discussed during the opinion as appropriate for disposing of Jones’s contentions.
¶ 4. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 5. As Jones’s assignments of error stem from purported misapplications of Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), our standard of review requires reversal only if the factual findings of the trial judge are “clearly erroneous or against the overwhelming weight of the evidence.” Tanner v. State, 764 So.2d 385, 393(¶ 14) (Miss.2000). Determinations made by a trial judge under Batson are accorded great deference because they are “based, in a large part, on credibility.” Coleman v. State, 697 So.2d 777, 785 (Miss.1997). In the Batson context, the term “great deference” has been defined as “insulating from appellate reversal any trial findings which are not clearly erroneous.” Lockett v. State, 517 So.2d 1346, 1349-50 (Miss.1987).
I. DID THE TRIAL COURT ERR IN FINDING THAT THE STATE MADE A PRIMA FACIE CASE OF RACIAL DISCRIMINATION REGARDING JONES’S PEREMPTORY STRIKES?
¶ 6. Jones argues that the trial court erred in finding that the State made a prima facie case that Jones had used his peremptory strikes to exclude members of a certain racial group from the jury. As previously discussed in this opinion, Jones used six peremptory strikes, five of which applied to five Caucasian males. The State objected to the strikes, and the trial court agreed that the use of the strikes showed evidence of racial, and perhaps gender, discrimination.
¶ 7. It is well-established law that the same Batson analysis applies whether the objections originate from the State or the defense. McCollum, 505 U.S. at 59, 112 S.Ct. 2348; State v. Rogers, 847 So.2d 858, 862 (¶¶ 16-19) (Miss.2003); McFarland v. State, 707 So.2d 166, 171(¶13) (Miss.1998). “Under Batson, the party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory strike.” McFarland, 707 So.2d at 171(¶ 13) (citing Batson, 476 U.S. at 96-97, 106 S.Ct. 1712; Stewart v. State, 662 So.2d 552, 557 (Miss.1995)); see also Griffin v. State, 610 So.2d 354, 356 (Miss. *571 1992) (holding that within the Batson context “what’s sauce for the goose is sauce for the gander”).
¶ 8. The primary question is “whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of strikes based on race or gender, or in other words ‘the totality of the relevant facts gives rise to an inference of discriminatory purpose.’ ” Puckett v. State, 788 So.2d 752, 757(¶ 14) (Miss.2001) (quoting Randall v. State, 716 So.2d 584, 587(¶ 16) (Miss.1998)). The record reflects that Jones is African-American, while each of the jurors stricken, save for juror 20, were Caucasian males. The trial court held that the State had presented a prima facie case that Jones was striking jurors based upon their race and possibly then-gender.
¶ 9. After the State voiced its objection under Batson, Jones proceeded to provide race-neutral reasons for his strikes. When racially neutral reasons for the peremptory strikes are given, the question of the sufficiency of the prima facie case is moot. Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Manning v. State, 735 So.2d 323, 339(¶ 28) (Miss.1999); Woodward v. State, 726 So.2d 524, 530(¶23) (Miss.1997); Aguilar v. State, 847 So.2d 871, 876(¶ 9) (Miss.Ct.App.2002). As this issue is moot, we proceed to the other issues raised on appeal.
II. DID THE TRIAL COURT ERR IN HIS FINDING REGARDING JONES’S EXPLANATION FOR HIS PEREMPTORY STRIKES?
III. DID THE TRIAL COURT ERR IN FINDING THAT JONES’S PEREMPTORY STRIKES WERE IMPROPER?
IV. DID THE TRIAL COURT ERR IN DISALLOWING JONES HIS ORIGINAL FIVE PEREMPTORY STRIKES BECAUSE THE STATE FAILED TO CARRY ITS BURDEN OF PRETEXT?
¶ 10. Jones’s next three issues address the trial court’s findings that Jones failed to articulate race-neutral reasons for his peremptory strikes; as these issues involve the same law and precedent, we address them together. Jones argues that the trial court erred in not making explicit, on-the-record findings regarding Jones’s race-neutral reasons for his peremptory strikes against the jurors, and that the trial court erred in finding that his peremptory strikes were improper.
¶ 11. After the party opposing the strikes makes its prima facie case, the side exercising the strikes must articulate racially-neutral reasons for the strikes. McFarland, 707 So.2d at 171(¶ 14). Such explanations do not have to be persuasive, or even plausible. Lynch v. State, 877 So.2d 1254, 1271(¶ 49) (Miss.2004) (quoting Randall, 716 So.2d at 588(¶ 16)). “At this [second] step of the inquiry, the issue is the facial validity of the prosecutor’s explanation. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral.” Id. After the proponent of the strikes offers his race-neutral reasons, the party making the Batson objection is allowed to rebut the reasons offered by the striking party; the failure to rebut the offered reasons requires the trial court to examine only the reasons given by the striking party. Bush v. State, 585 So.2d 1262, 1268 (Miss.1991).
¶ 12. A trial court must make an on-the-record factual determination accepting or disposing of a party’s explanations regarding the challenged peremptory strikes. Johnson v. State, 875 So.2d 208, 209(¶ 2) (Miss.2004). When a trial court enunciates “clear factual findings” regard *572 ing its decision to accept or reject reasons for peremptory strikes, “the guesswork surrounding the trial court’s ruling is eliminated upon appeal of a Batson issue to [the appellate court].” Hatten v. State, 628 So.2d 294, 298 (Miss.1993). Our supreme court has identified five indicia of pretext when analyzing the race-neutral explanations for peremptory strikes under Batson:
(1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge;
(2) the failure to voir dire as to the characteristic cited;
(3) the characteristic cited is unrelated to the facts of the case;
(4) lack of record support for the stated reason; and
(5) group based traits.
Berry v. State, 802 So.2d 1033, 1038(¶ 15) (Miss.2001).
¶ 13. In defense of his peremptory strike against juror 18, Walker argued that number 18 was an accountant, had a military background, and was a crime victim. The trial judge responded that a number of the petit jury were also crime victims, namely juror 18, 20, 27, 39, 70 and number 165, who had not been tendered on the petit jury. The judge then instructed Walker to continue. Walker next argued that he exercised a peremptory strike against juror number 20 because she was a teacher and her jury questionnaire implied that she was a caregiver for small children[2]. Walker also argued that she, too, was a crime victim. Regarding juror 29, Walker pointed out that twenty years ago he was involved in some litigation in which he took that juror’s deposition. Additionally, juror 29 had previously served on a jury that had convicted someone. Walker further argued that his research reflected that juror 29 would favor the State, as he was a plant manager.
¶ 14. Walker argued that juror 39 was a crime victim, had served in the military, and was a manager. Walker asserted that juror 64 was employed as an investigator with the State Auditor’s Office, and as a general rule he did not want individuals with a law enforcement background on the jury. Finally, Walker argued that juror number 65 had a child under the age of twelve, close to the victim’s age at the time of the alleged rape.
¶ 15. The court responded that another juror 17, whom Walker did not strike, was also the parent of a child twelve years of age or younger. The State then interjected that juror 27 had also served as a criminal juror in the past, had voted to find that defendant guilty and was a crime victim. Walker responded that juror 27 was a factory worker and not a manager.
¶ 16. The court then opined:
Well, I don’t know any authority that I have that I can just categorically exclude jurors because of occupation ... there’s been no showing of any of those alleged crime victims whether it was a child, a murder, a rape, a robbery, a misdemeanor or lawn mower theft. Again, you are asking me to exclude whole categories of people ... I think the rest of them are just pure subterfuge as a pretext to try to get a class of people off the jury, and as a trial judge, I can’t let it happen. I cannot let it happen. And God knows if I had any reason here that I felt like was legally sufficient, I would sustain at least part of them, but I don’t see anything but a pattern here of not wanting a whole class of people....
*573 ¶ 17. This Court must give great deference to the trial court in “determining whether the offered explanation under the unique circumstances each case presents is truly a race-neutral reason.” Webster v. State, 754 So.2d 1232, 1236(¶ 10) (Miss.2000). This deference is due because “the demeanor of the attorney making the challenge is often the best evidence of race-neutrality.” Walker v. State, 815 So.2d 1209,1215 (¶ 12) (Miss.2002). We find no error in the trial court’s finding. The court was clearly unpersuaded by Walker’s arguments, and this assessment stemmed from the court’s prior experience with Walker (noting that this was not the “first rodeo” for either the judge or defense counsel), Walker’s demeanor, the arguments Walker advanced regarding the strikes, and the arguments advanced by the State.
¶ 18. We also disagree with Jones’s contention that the State waived its right to contest Jones’s explanations for the strikes. The State countered the explanations by pointing out that Walker was inconsistent in applying his rationale as evidenced by juror number 27.
¶ 19. These issues are without merit.
V. DID THE TRIAL COURT ERR IN NOT ALLOWING JONES TO CONSIDER THE ENTIRE JURY PANEL FOR PEREMPTORY STRIKES?
¶ 20. Jones’s final argument is that the trial court denied him the use of his peremptory strikes in not allowing him to strike the jurors after the court denied the peremptory strikes. Specifically, the trial court re-instated jurors 18, 20, 39, 63 and 65, allowing the strike against juror number 29 to stand. The following dialogue then ensued:
MR. WALKER: Well, Judge, do I get to exercise five more challenges then?
THE COURT: Yes, sir, if you go that far. I’m just trying to find out just— where had you tendered through, Mr. Kelly? For some reason I don’t have it marked.
MR. KELLY: Through 65.
THE COURT: Through number 65?
MR. REID: It would be 75 now.
MR. KELLY: Well, and I don’t object to 75. We had eleven counting through 65, and then I’m looking at 70 and 72[who] were excused.
THE COURT: They were.
MR. KELLY: So I would accept 75[,] and I tender through 75 as a panel of 12.
The court then instructed Reid to count off the jurors on the panel: numbers 12, 18, 19, 20, 24, 27, 39, 58, 63, 64, 65, and 75.
THE COURT: That’s been tendered. All right. I’m with you now.
MR. WALKER: Is it proper for the defense to exercise its five challenges remaining?
THE COURT: Sir?
MR. WALKER: Is it appropriate now, Judge, for me to exercise my five challenges remaining?
THE COURT: Yes, sir.
MR. WALKER: With this statement, Judge, I’m going to strike the first five on the list under the theory that if Mr. Kelly wants them on the jury, I don’t. D2 will be number 12, [name omitted]; D3 will be number 18, [name omitted]; D4 will be number 19 [name omitted].
THE COURT: Wait a minute now. You are going back striking jurors that’s [sic] already been—
MR. WALKER: I think so, Judge.
THE COURT: I don’t know what you’re doing.
*574 MR. WALKER: You took away my strikes.
THE COURT: I just reinstated these people on the jury. What are you saying now? You can go back and reconsider the same people and come up with a different strike?
MR. WALKER: I would think so, Judge. I mean, eighty per cent of my strikes were taken away from me.
THE COURT: Yes, sir, I’m saying the reasons you gave me for those preempts were insufficient, legally insufficient. You’ve still got your strikes, but I can’t go back and let you consider all these jurors again and come up with a different reason. I have never been requested to do that, but I don’t think that would be proper at all....
¶21. Citing Mississippi Code Annotated Section 99-17-3 (Rev.2000), Jones argues that the trial court’s refusal to allow him to strike the tendered jurors in this manner was error. Section 99-17-3 provides, in pertinent part, as follows:
In cases not capital the accused and the state each shall be allowed six peremptory challenges; but all peremptory challenges by the state shall be made before the juror is presented to the prisoner. In all cases the accused shall have presented to him a full panel before being called upon to make his peremptory challenges.
¶ 22. Jones argues that the trial court “took” Jones’s peremptory challenges “as a penalty for improper use;” thus, he should have been allowed to consider the entire jury panel and strike offending members.
¶ 23. Rule 10.01 of the Uniform Rules of Circuit and County Court addresses jury selection, providing, in pertinent part, as follows:
In felony cases not involving the possible sentence of death or life imprisonment, the defendant and the prosecution shall have six (6) peremptory challenges for the selection of the twelve regular jurors. These challenges may not be used in the selection of an alternate juror or jurors.
¶ 24. The use of the word “shall” in section 99-17-3 and Rule 10.01 implies that the trial court has no discretion in the number of peremptory strikes given to each side; thus, the court lacked the discretion to grant Jones five additional strikes. But see Moody v. State, 841 So.2d 1067, 1079(¶ 32) (Miss.2003) (where trial court granted each side nineteen peremptory strikes) and Le v. State, 913 So.2d 913, 924(¶ 18) (Miss.2005) (where the defendant, having left peremptory challenges “on the table”, could scarcely demonstrate prejudice in trial court’s refusal to grant additional peremptory strikes).
¶ 25. Regarding the improper “taking” of peremptory strikes, we note that a similar argument was advanced in Weeks v. State, 804 So.2d 980 (Miss.2001), wherein Weeks argued that the trial court denied him his full number of peremptory strikes in refusing five of the strikes[3]. The Mississippi Supreme Court found that the issue was procedurally barred; notwithstanding the procedural bar, the court opined:
The State challenged all of the twelve strikes under the Batson rule. Of the twelve strikes, the trial judge denied five strikes. Defense counsel clearly exercised twelve peremptory strikes on the *575 venire persons as demonstrated in the trial record. In essence, the defense did not use all the strikes in a proper manner.
Weeks, 804 So.2d at 990(¶ 23). The implication is clear: Jones exercised his six peremptory strikes against jurors 18, 20, 29, 39, 63, and 65 — the trial court did not “take” the strikes from him. Furthermore, under the mandatory language of URCCC 10.01, Jones is not entitled to additional peremptory strikes due to his failure to use the strikes for non-discriminatory purposes.
¶ 26. Jones does not cite any relevant authority regarding his argument that he should have been able to revisit and, therefore, re-strike members of the panel of tendered jurors. Failure to cite relevant authority obviates this Court’s obligation to review this issue. Simmons v. State, 805 So.2d 452, 487(¶ 90) (Miss.2001). Notwithstanding the procedural bar, we are unpersuaded that Jones’s attempt to strike the empaneled jurors was less pretextual than his first attempt to strike the unwanted jurors. The court’s ruling that the strikes were discriminatory ends the analysis of the issue at the trial level. To hold otherwise would accomplish nothing but a time-consuming, circuitous series of attempts to conjure an acceptable reason to strike an unwanted juror.
¶ 27. This issue is without merit.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF COUNT I, STATUTORY RAPE, AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND UPON RELEASE FROM THE TERM OF INCARCERATION PLACED UNDER A TERM OF FIVE YEARS OF NON-REPORTING POST-RELEASE SUPERVISION; AND COUNT II, SEXUAL BATTERY, AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO RUN CONCURRENTLY WITH THE SENTENCE IMPOSED IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
KING, C.J., MYERS, P.J., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.

. The Court of Appeals declines to identify sexual assault victims who are minors. In the interest of the child's privacy, names of family members have been substituted with aliases.

. The record does not indicate juror 20’s race.

. Although the defendant in Weeks was entitled to twelve peremptory strikes under Miss. Code Ann. Section 99-17-3 because he was charged with a capital crime, this distinction is irrelevant for purposes of our analysis.