# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CT-01136-SCT

*REGINALD TORLENTUS JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/11/1996 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT M. RYAN |
| | THOMAS M. FORTNER |
| | ANDRE DE GRUY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/24/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is an appeal after remand to the Hinds County Circuit Court, First Judicial District, for the limited purpose of conducting a proper ***Batson*** hearing.  Reginald Torlentus Johnson was convicted of deliberate design murder in September, 1996, and was sentenced to serve life in prison in the custody of the Mississippi Department of Corrections.  He appealed on the basis that, inter alia, the State used its peremptory strikes in a systematic way to eliminate blacks from the jury in violation of ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and ***Hatten v. State***, 628 So.2d

294 (Miss. 1993). The State used only six of its twelve peremptory strikes, but all six were used to eliminate black venire persons. The resulting petit jury consisted of 7 blacks and 5 whites.

¶2. In December, 1998, the Mississippi Court of Appeals held that the State's racially neutral reasons for their strikes were being offered in good faith, and affirmed the trial court. *Johnson v. State*, 754 So.2d 1178, 1179 (¶5) (Miss. 2000). After granting Johnson's petition for certiorari, this Court applied the rule of *Hatten v. State,* reversed the judgment of the Court of Appeals, and remanded the case for a proper *Batson* hearing, on the sole issue that the trial court neglected to undertake the third step of the *Batson* analysis, by failing to make on-the-record factual findings for each peremptory strike made by the State:

> "We say once again that the rule promulgated in *Hatten* will be enforced. The judgment of the Court of Appeals is reversed. The case is remanded to the Hinds County Circuit Court for a hearing and findings pursuant to *Hatten* and *Batson*."

*Johnson* 754 So.2d at 1180, (¶8). The *Hatten* rule requires the trial court to make on-the-record factual findings that each race neutral reason offered by the State for striking a juror is non-pretextual. *Johnson*, 754 So.2d at 1180; *Hatten*, 628 So.2d at 298.

## FACTS

¶3. The new *Batson* hearing was conducted on May 10, 2002. It consisted of direct and cross-examination of Glenda Haynes, the assistant district attorney, who along with then-District Attorney Ed Peters, had tried the case in 1996. Presiding over the hearing was Circuit Judge Winston Kidd, who was not the initial trial judge. Haynes testified that Peters had conducted the voir dire for the State and it had been her responsibility to watch, listen, and take notes about what was said and what the prospective jurors were doing during voir dire. Her testimony was based on her notes from the trial, her personal recollection,

2

District Attorney Peters's notes, and the transcript of the original proceedings. Judge Kidd actively participated in the hearing, asking questions from time to time to clarify details of testimony and interacting with the attorneys for Johnson and the State. At the conclusion of the evidence and argument, Judge Kidd made oral findings on the record in which he reiterated each reason given by the state for each strike, after which he found that the reasons were race neutral. Thereafter, he concluded, in summary fashion, that the findings had been made, that the reasons given by the State were sufficiently race neutral under the *Batson* standard, and that the State did not engage in unconstitutional discrimination in the use of its peremptory challenges. We affirm that ruling.

## DISCUSSION

¶4. On review, a trial court's determinations under *Batson* are afforded great deference because they are largely based on credibility. *McGilberry v. State*, 741 So.2d 894, 923 (Miss. 1999) (citing *Coleman v. State*, 697 So.2d 777, 785 (Miss. 1997)). This Court will not reverse factual findings relating to a *Batson* challenge unless they are clearly erroneous. *Id*. *See also Woodward v. State*, 726 So.2d 524, 530 (Miss. 1998); *Lockett v. State*, 517 So.2d 1346, 1349-50 (Miss. 1987). "This perspective is wholly consistent with our unflagging support of the trial court as the proper forum for resolution of factual controversies." *Id.* at 1350.

¶5. Johnson asserts that the trial court decision on remand is clearly erroneous. Specifically, Johnson argues that the third step in the *Batson* test requires "factual truthfulness," that is, the trial judge may not simply take at face value the explanation asserted by the State, but each on-the-record findings of non-pretext must contain some evidence from the record that supports the reason for the strike. *See Hatten*,

628 So.2d at 302. *See also* ***Snow v. State***, 800 So.2d 472, 479-81 (Miss. 2001) (***"Hatten*** does not require literal truth in the reason proffered. It only requires that there be some basis in fact sufficient to allow the court to make a reasonable judgment that it is not contrived."). Johnson contends that the trial judge merely made a determination that the reasons were race neutral, as required in step two of ***Batson***, but did not make a determination that they were factually truthful and non-pretextual, as required by step three of ***Batson*** and by ***Hatten***. The following colloquy took place during the hearing:

> THE COURT: So it's the Defendant's position that the trial court judge did not make a determination that those reasons given for striking juror one on panel one - - is it the Defendant's position that the trial court did not make a determination that those reasons were race neutral?
>
> MR. DeGRUY [Counsel for Defendant]: He made a determination that they were race neutral. He did not make a determination that they were factually truthful and that's why we're back here because we had never gotten to step three and it is impossible to make that determination because they failed to make the record at the time - - to raise the issue so that a true record could be made.
> . . .
> THE COURT: When the Court made a decision to accept those challenges as race neutral, don't you think the Court actually made a factual finding that they were race neutral? If the Court accepted the reasons given by the State, even thought the Court did not give individual reasons on the record, but if the Court allowed the State to strike these individuals, wouldn't you think that the Court made factual findings?
>
> Mr. DeGRUY: Absolutely not. I think that's why the case is back here because the Court did not make - -
>
> The COURT: Because they're not on the record.

¶6.     Haynes testified regarding the State's six strikes, and Johnson's attorney provided rebuttal, as follows:

S-1   Panel 1, juror 1, black male, age 40. Haynes testified that this juror did not pay attention during voir dire, was not even facing the district attorney as he spoke, and was totally unresponsive.

4

Additionally, Haynes testified that she recalled that the juror was turned around in his seat, unresponsive, and gave the impression that he didn't want to be there, even when defense conducted voir dire.

S-1 rebuttal. Johnson argued that it was his position that during voir dire, this juror was not looking away, and that although the record shows that this juror did not respond to any questions, it also shows that he was not directly asked any questions, and that there is no evidence to suggest that this juror was withholding any information or that he should have answered any questions. Johnson asserted that, when subjective reasoning is used, such as no eye contact, inattentive witness, turning away in his seat, ***Hatten*** requires that a record be made that shows that this actually occurred. Johnson argued that it is incumbent on the prosecution to approach the bench at the time a juror's inattentiveness or questioned demeanor is noted, to make a record of the behavior and that the judge should make a factual finding of what was occurring at that point, and that since that did not happen in the initial trial, Johnson should get a new trial. For reasons set forth infra, we disagree.

S-2   Panel 1, juror 6, black female, age 52.   Haynes testified that she had a full page of notes from the initial voir dire which reflected that this juror requested an individual, or private, voir dire due to the fact that her sister's child had been killed and the murder had not been solved. The juror also indicated that she would be affected by the fact of the unresolved murder. Haynes stated that she had personally seen members of that family in the DA's office. Haynes's observation was that the juror's "whole mannerism indicated that she was quite upset", possibly with all law enforcement, because this murder had not been solved.

S-2 rebuttal. Johnson argued that the State struck this juror because her husband was serving a prison sentence, but allowed other white jurors in the same situation to be seated. He stated that this type

5

of disparate treatment indicates discriminatory intent, and that even though this reason is objectively race neutral, it is not subjectively the reason for the strike. The record reflects that Johnson did not acknowledge the other reasons the State gave for this strike.

S-3   Panel 1, juror 9, black female, age 23;  S-5  Panel 1, juror 11, black male, age 23; and S-6 Panel 2, juror 1, black female, age 29 - all were struck based on age. Haynes testified that she and Peters had an informal policy that all individuals under the age of 30, regardless of race, were excluded. She said that this was based essentially upon observation that young people did not seem to have a stake in the community and were not mature enough, so they routinely excluded them. On questioning by Johnson, she stated that this was not an official, written policy of the District Attorney's office, but rather just a personal one which she and Peters shared based on many years of prosecuting cases.

S-3, 5, and 6 Rebuttal.   Johnson offered no rebuttal to S3, nor to S5, basically conceding that there was no proof of racial discrimination with regard to these two jurors. However, with regard to S-6, he contends that this is a 29-year-old black woman with previous jury experience, and the reason given for her strike is an arbitrary age cut-off which is improper. Johnson also points out that the State had accepted a 31-year-old white male juror with no jury experience who has a prior conviction.

S-4   Panel 1, juror 10, black male, age 51.  Haynes testified that this juror had indicated that he had previously been on a civil jury panel where a police officer was a defendant in a case involving a car wreck. The jury awarded a small amount to the plaintiff, after which the judge increased the award. Haynes stated that, when asked if he would "follow the instructions of the court" the juror's "whole response indicated that he did not like the fact that the judge had added to the verdict" and for that reason

6

might not follow the judge's instructions in this criminal case. Haynes further testified that "[i]t was the way he responded, it was the tone to his voice, and the way he looked at the judge" that made her think that the juror was not going to follow the judge's instructions.

S-4 rebuttal. Johnson argued that the case was a simple automobile accident which just happened to involve a police officer, and claimed that the record reflects that this juror was questioned about the civil trial during voir dire, and stated that it would not influence him. Johnson argues that the prosecutor is simply electing not to believe this juror, without explaining why.

¶7.     Following this testimony on remand, the trial judge addressed each strike, one by one, summarizing each time the prosecutor's testimony and Johnson's rebuttal, and finding that the reasons for each strike were race neutral.

¶8.     The trial court made the following findings on remand:

> The Court has reviewed all of the documents filed in this matter and after having a ***Batson*** hearing pursuant to the Supreme Court's mandate and after listening to all of the evidence at the hearing this morning, the Court is prepared to make an on-the-record factual determination on the merits of the reasons cited by the State for its use of its peremptory challenges against some of the potential jurors.
>
> The State used S-1 to strike juror one on panel one. The reason given by the State was that that particular juror refused to look at the State, at the prosecutor, when the prosecutor was asking questions and that that particular juror did not pay attention and was totally turned around and was not facing the prosecutor as he was attempting to ask questions. That was the reason given by the State for their use of S-1 in striking that juror.
>
> The Court finds that the reason given by the State was race neutral and that strike will be allowed to stand.
>
> The reason given by the State for striking juror six on panel one was that that particular juror, her sister's child was killed prior to this trial and from Ms. Haynes, one of the prosecutors in this matter, from her observation she found that that particular juror was upset with law enforcement and the fact that the murder had not been resolved. And

7

further Ms. Haynes had made a check mark on her notes that that particular juror wanted to talk in private and the State struck that juror by using S-2 for those reasons.

At this time the Court makes a factual finding that those reasons given by the State for striking that juror were race neutral reasons.

As to the State's use of S-3 to strike juror nine, panel one, the Defendant has conceded this particular strike by the State. However, the court makes a factual determination that Ms. Haynes testified that it was the policy of her and the other attorney, who was the district attorney at the time, Ed Peters, who tried this case; she stated that it was their policy to exclude individuals under the age of 30. This particular individual was 23 years old and the State used S-3 to strike this individual.

The Court makes a factual finding that that strike was race neutral.

As to juror ten on panel one, the State based its strike upon the fact that it appeared that that particular individual was upset that the judge on a case that he had served as a juror had added certain damages to a verdict and that the State believed that this juror could not follow the court's instructions even though the Defendant states that that particular question was asked as a whole and this particular juror did not state that he could not follow the law. The state believed in its analysis that based upon this juror's answers that this juror could not follow the instructions of the court and the State used S-4 to strike this juror.

The Court finds that the reasons relied upon by the State in striking juror ten on panel one were race neutral reasons.

As to the State's striking of juror eleven on panel one where the State used one of its peremptory strikes to strike that particular juror, the State struck that juror due to the juror's age, being only 23 years old. And again the Court will take note of the fact that Ms. Haynes testified that it was a policy of hers to strike jurors under the age of 30 and she struck this juror due to age. And again the Defendant has conceded the striking of this particular juror, however, the Court makes a factual finding that this was a race neutral reason given by the State for the striking of that juror.

As to the striking of juror one on panel two, which the State again used as its reasons that this particular juror was under the age of 30 and again the State struck that juror for that reason alone. However, the Defendant states that this juror was 29 years old, close to the age of 30. The Defendant continues to object to the striking of this particular juror, however, the Court makes a factual finding that the reasons relied u0on by the State were race neutral reasons in that there is case law to support5 that jurors --

8

it is proper and clearly race neutral to strike jurors based upon age and the Court will allow that strike to stand.

I believe this complies with the mandate that was given by the Supreme Court and this will be the ruling and the order of this Court.

¶9.     Johnson argues that clearly Judge Kidd only applied step two of ***Batson***, addressing only the articulation of race-neutral explanations for each strike, and thus the instructions of this Court on remand to address step three and "make an on-the-record factual determination of the merits of the reasons cited by the State for its use of peremptory challenges" has not been followed. While we agree that the wording of the trial court's findings could have been more precise, we nevertheless conclude based on the complete record before us and the content of the trial court's factual findings are sufficient for us to determine that there has been no purposeful discrimination by the State's use of peremptory challenges.

¶10.     In ***Puckett v. State***, 788 So. 2d 752 (Miss. 2001), this Court was faced with a less than precise finding by a trial court judge after a ***Batson***-related remand, we held that the judge "did not make an on-the-record, juror-by-juror review of the specific reasons why he found each peremptory challenge to be acceptable, which clearly would have been the better route to take. However, 'where a trial judge fails to elucidate such a specific explanation for each race neutral reason given, we will not remand the case for that ***Batson***-related purpose alone. This Court is fully capable of balancing the ***Batson*** factors in cases such as this one. Contined remand of such cases only wastes the trial court's limited resources and acts to further delay justice.'" ***Id.*** at 764. (citing ***Gary v. State***, 760 So. 2d 743, 748 (Miss. 2000)). In the present case, as in ***Puckett***, no objection was made by defense counsel, nor was any request made for the judge to make a more precise finding (specifically applying step three) at that point.

¶11. The essential inquiry is whether Johnson has met the burden of showing that the State has engaged in a pattern of strikes based on race, i.e., whether "the totality of the relevent facts gives rise to an inference of discriminatory purpose." *Horne v. State,* 825 So. 2d 627, 635 (Miss. 2002) (citing *Randall v. State*, 716 So. 2d 584, 587 (Miss. 1998).

## CONCLUSION

¶12. We conclude that Johnson failed to demonstrate that the State's proffered reasons were pretextual and that he has not carried his burden of proving purposeful discrimination. The trial judge found that the State's peremptory challenges were not used in a racially discriminatory manner. The record fully supports that finding. In light of the deference accorded the trial court in such findings, the judgment of the Hinds County Circuit Court is affirmed.

¶13. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**