# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-02086-SCT

*MARK HICKS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2006 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | EDDIE H. BOWEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/06/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Mark Hicks was indicted by the grand jury of Simpson County, Mississippi, on one count of aggravated assault and one count of possession of a firearm by a convicted felon. Hicks was tried and acquitted by the jury on the aggravated assault count and convicted by the jury on the count of possession of a firearm by a convicted felon. After the jury returned the guilty verdict, Hicks was adjudicated a habitual offender by the trial court. Hicks was

sentenced by the trial court, the Honorable Robert G. Evans, Circuit Court Judge, presiding, to serve a term of three years in the custody of the Mississippi Department of Corrections, without the benefit of early release or parole. Hicks now appeals his conviction and sentence to this Court.

**FACTS**

¶2.     Tambourine Hicks Travis testified that on December 19, 2005, while she was visiting her father, Joseph Hicks, her brother, Mark Hicks, came to their father's house. Hicks was upset. Tambourine stated that Hicks "walked in and said, 'Somebody is going to die.'" Hicks claimed that somebody broke into the house he was living in and stole some bread, bologna, and crackers. Tambourine testified that Hicks then went over to the far side of her father's bed and picked up a rifle that belonged to her father. The rifle had a scope on it. Hicks loaded the rifle with bullets that were located on the entertainment center beside the bed. Tambourine stated that she watched Hicks load the rifle.

¶3.     Tambourine followed Hicks out of the bedroom toward the kitchen. Hicks stated that Eric McDonald and Donny broke into the house and stole his bread, bologna, and crackers.[1] Eric and Eric's wife, Joyce McDonald, left Joseph Hicks's house, headed toward their house. Tambourine testified that a short time later, she heard three shots fired and saw Joyce run under the car porch of Joseph Hicks's house. Joyce came inside and asked those inside to call 911 because Hicks was shooting at them. Tambourine testified that she called 911 and

---

[1] Eric McDonald is Hicks's and Tambourine's nephew, and Donny is their cousin.

yelled to Hicks that she had called the police. Hicks wiped the gun down with a rag, and he told his girlfriend to carry the gun back to his father's house.

¶4.     Eric testified that his uncle, Hicks, came into his grandfather's house and made the threat that somebody was going to get killed or die. Hicks then went over to the bed and got a rifle, grabbed some shells, and started loading the gun. Hicks then went out the door. Eric stated that he and his wife, Joyce, then left the house, headed back to their house. When Hicks fired the first shot, they took cover behind their car. Eric told Joyce to go call the police. After Tambourine told Hicks that she had called the police, Hicks wiped the gun down and had his girlfriend return the gun to Joseph Hicks's house.[2]

¶5.     Cindy Jensen, the Circuit Clerk of Simpson County, testified that she was subpoenaed as the custodian of the court files to bring court files numbered 7532 and 7688 with her to court.[3] Jensen verified that the certified copy of the final judgment and sentence of the court as to defendant Mark Hicks, in cause number 7532, was a true and correct copy. Jensen stated that the judgment reflected that Mark Hicks was convicted of grand larceny on March 31, 1986. In cause number 7688, Jensen testified that the true and correct, certified copy of the judgment reflected that the defendant, Mark Hicks, was convicted of burglary on March 13, 1987. Jensen was asked to look through the actual files in cause numbers 7532 and 7688 to verify that there was neither a pardon from the governor of the State of Mississippi nor any relief from disability that would allow Mark Hicks to carry a firearm.

_____

[2] Joyce McDonald also testified to a similar account of events as provided by Tambourine and Eric.

[3] Jensen stated that she had worked in the circuit clerks' office since November of 1984, first as a deputy clerk and then as the circuit clerk.

3

¶6. On cross-examination, Jensen testified that in cause number 7688, the burglary conviction, the file contained a social security number on the commitment order that goes to the penitentiary. She stated that she did not personally know Hicks. Then the defense asked Jensen if there was anything in the files that could identify Hicks as that Mark Hicks. Jensen responded that "the only thing contained is a date of birth and social, and it has a place for race and sex, which is black male. But there is no picture." The defense asked Jensen, "do you know if there's possibly another Mark Hicks out there?" Jensen responded, "I do not know that." On re-direct, Jensen stated, "I don't know of another Mark Hicks."

**DISCUSSION**

I. **Whether the trial court erred by not granting Hicks's motion for a directed verdict or his motion for judgment notwithstanding the verdict (JNOV).**

¶7. Hicks made a post-trial motion for JNOV, which the trial court denied. Hicks argues that the State did not prove beyond a reasonable doubt that he was a convicted felon. A motion for JNOV challenges the legal sufficiency of the evidence. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). "[T]his Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id*. at 778. Here, this occurred when the trial court denied Hicks's motion for JNOV.

¶8. Hicks argues that the State failed to prove beyond a reasonable doubt that Hicks was a convicted felon because the evidence presented was insufficient to establish that Hicks was the Mark Hicks convicted in court files number 7532 and 7866. The State disagrees, relying on Jensen's testimony as to the information contained in the court file and the certified final judgment and sentence of the court in cause numbers 7532 and 7866 introduced into

4

evidence, as well as this Court's holding in **Branning v. State**, 224 So. 2d 580 (Miss. 1969).

In **Branning**, 224 So. 2d at 580, the State sought to increase the criminal penalties against

Branning, pursuant to Section 6866 Mississippi Code 1942 Annotated (Supp. 1968), since

this was his third offense.

¶9.    In **Branning**, this Court considered whether it was error for the trial court to give the

following instruction to the jury:

> The Court instructs the Jury for the State of Mississippi that under the law, identity of name of the Defendant and the person previously convicted is prima facie evidence of identity of person, and if you believe from the evidence in this, beyond a reasonable doubt that the name of the Defendant in this case and the name of the person previously convicted are the same, then you would be warranted in the presumption that they are in fact the same person.

**Branning**, 224 So. 2d at 580.

¶10.   The Court held:

> There is no merit in appellant's criticism of the instruction granted the State that identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person. The appellant did not deny his identity with the two previous convictions charged and proved; therefore, the presumption is that the appellant is one and the same person as the one previously convicted. The jury was entitled to this instruction as to the law from the court.
>
> We said in **Goldsby v. State**, 240 Miss. 647, 123 So.2d 429 (1960), *cert. den.*, 365 U.S. 861, 81 S. Ct. 829, 5 L. Ed. 2d 824 (1961): "Moreover, it is a well established rule of evidence and practice in this State that the identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person, and, in the absence of rebutting testimony, supports a finding of such identity. **McGowan v. State**, 1946, 200 Miss. 270, 281, 25 So. 2d 131, [suggestion of error overruled,] 26 So. 2d 70." 240 Miss. at 674, 123 So. 2d at 439.

**Branning**, 224 So. 2d at 582.

¶11.   Similarly, in **Course v. State**, 461 So. 2d 770, 771 (Miss. 1984), this Court stated:

Clarence Course appeals from his conviction of the crime of burglary of a dwelling in the Circuit Court of the First Judicial District of Hinds County and sentence to serve ten years in the Department of Corrections. Having also found Course had been previously convicted of two separate felonies, one for armed robbery and another for burglary, all as charged in the indictment, the circuit judge sentenced Course as a habitual offender to serve the full ten years without parole, probation or reduction of sentence under Miss. Code Ann. § 99-19-81.

. . .

Course has two assignments of error, the first being that the State, simply by producing records that one "Clarence Course" was convicted of the two previous felonies, did not in and of itself identify that person as the defendant on trial. The records did furnish a presumption of such identity, however, which could have been easily overcome if erroneous. *See*: ***Branning v. State***, 224 So. 2d 579 (Miss. 1969); ***Goldsby v. State***, 240 Miss. 647, 123 So. 2d 429, 124 So. 2d 297, 129 So. 2d 127 (1960); and 1 Wharton's Criminal Evidence, § 103, pp. 180-82 (Torcai ed. 13th ed. 1972). We do add the State would be well advised to be prepared to go further than mere records, however, especially where the name is not unusual or uncommon. . . .

¶12. However, in ***Branning*** and ***Course***, this Court addressed the question in the context of sentencing the defendant to an enhanced sentence as a habitual offender. Here, we must examine the evidence presented to determine whether the State presented sufficient evidence to support Hicks's conviction for possession of a firearm by a convicted felon.

¶13. In ***Ivy v. State***, 949 So. 2d 748, 751 (Miss. 2007) (internal citations omitted), this Court reiterated the standard of review for legal sufficiency as follows:

[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."

. . .

6

However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient.

¶14. The circuit clerk, Jensen, testified that she was subpoenaed by the State to bring court files numbered 7532 and 7688 with her to court. She stated that the name of the defendant in files numbered 7532 and 7688 was Mark Hicks. According to the certified copy of the final judgments and sentences, Hicks was convicted of grand larceny on March 31, 1986, in cause number 7532, and he was convicted of burglary on March 13, 1987, in cause number 7688. Jensen testified that the court files did not contain a pardon from the governor of the State of Mississippi nor any relief from disability. Jensen stated that she did not personally know Hicks, and it was not her duty to identify Hicks. While Jensen stated that there was no picture in the court file, file number 7688 contained a social security number on the commitment order to the penitentiary.[4] Jensen also stated that the file contained a date of birth and information listing the race and sex as a black male.

¶15. There also was sufficient evidence to support that Hicks was in possession of a weapon. Tambourine testified that she followed her brother, Hicks, into their father's bedroom, where Hicks retrieved a rifle. She then followed Hicks into the kitchen. She observed Hicks go outside with the gun, and she called the police when she heard the gunfire. She saw Hicks wipe down the rifle and have his girlfriend return the gun to her father's house.

---

[4] Neither the State nor the defense asked Jensen to state the social security number that was listed in the court file.

¶16. Eric, Hicks's cousin, testified that he saw Hicks go over to the bed and get a rifle, grab some shells, and load the gun. Hicks then went out the door. According to Eric's testimony, he and his wife, Joyce, left, headed back to their house. They took cover when Hicks fired the first shot. The police were called to the scene. Eric's wife, Joyce, testified to a similar account of events.

¶17. The jury was called upon to review the evidence presented to determine whether the State met its burden and presented sufficient evidence to establish, beyond a reasonable doubt, each element of the offense as to each count. They were instructed by the trial court to use their good common sense and sound honest judgment in evaluating the evidence. The trial court refused the jury's request to inform them whether Hicks's social security number matched the circuit clerk's files. However, the jury returned a guilty verdict on the count of possession of a firearm by a convicted felon and a not-guilty verdict on the count of aggravated assault after hearing evidence. *See Ivy*, 949 So. 2d at 751. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Hicks for possession of a firearm by a convicted felon. *See Id.*

## II. Jury Instruction S-4.

¶18. Hicks admits that no objection was offered to the trial court as to the State's jury instruction S-4. Therefore, Hicks argues on appeal that the trial court's giving the jury instruction amounted to plain error. To prevail under the doctrine of plain error, the defendant must show that there was error, that the error resulted in a manifest injustice, and that it affected the defendant's fundamental rights. **Williams v. State**, 794 So. 2d 181, 187 (Miss. 2001). "This Court has found plain error in failing to instruct the jury properly. . . ."

8

*Williams*, 794 So. 2d at 188 (citing *Berry v. State*, 728 So. 2d 568, 570 (Miss. 1999) (finding plain error because failure to fully instruct the jury on the elements of the crime infringes on the fundamental rights of a defendant)).

¶19.   Jury Instruction S-4 stated:

The Court instructs the jury that it is unlawful for any person who has been convicted of a felony under the laws of the State of Mississippi, to possess any firearm unless such person has received a pardon, or has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code or has received a certificate of rehabilitation from the Court in which he was convicted.

The Court further instructs the jury that the defendant has not received a pardon, he has not received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code and he has not received a certificate of rehabilitation from this Court; therefore, if you find beyond a reasonable doubt that on or about December 19, 2005, in Simpson County, Mississippi:

1.   the defendant was a convicted felon, having been convicted of grand larceny on March 31, 1986, in Cause Number 7532 in the Circuit Court of Simpson County, Mississippi, and that he was also convicted of burglary on March 13, 1987, in Count I of Cause Number 7688 in the Circuit Court of Simpson County, Mississippi, and that,

2.   on or about December 19, 2005, in Simpson County, Mississippi, the defendant had in his possession a firearm, then, on your oaths as jurors, you shall find the defendant guilty of the unlawful possession of a firearm by a convicted felon, as contained in Count II of the indictment.

You are further instructed that if the State has failed to prove any one or more of the aforementioned elements beyond a reasonable doubt, then you shall find the defendant not guilty.

¶20.   Hicks argues that jury instruct S-4 peremptorily told the jury that Hicks had not received a pardon, a relief from a disability or a certificate of rehabilitation, thereby resulting in plain error by relieving the jury from finding each element of the offense.  Mississippi Code Annotated Section 97-37-5(1) (Rev. 2006) provides:

It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm *unless* such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.

(Emphasis added).

¶21. The absence of a pardon, relief from a disability, or a certificate of rehabilitation are not essential elements of the crime of possession of a firearm by a convicted felon. *See* Miss. Code Ann. § 97-37-5 (Rev. 2006). While this Court has not considered this issue, the Court of Appeals specifically addressed this same question from a different perspective in ***Estes v. State***, 782 So. 2d 1244, 1255 (Miss. Ct. App. 2000). In ***Estes***, the court determined that whether the defendant "received a pardon for the felony, or had not received a certificate of rehabilitation pursuant to Miss. Code Ann. § 97-37-5(c)" was an affirmative defense that was incumbent upon the defendant to raise, not an element of the offense for the State to have to prove beyond a reasonable doubt. ***Id.*** The court stated:

Moreover, proposed instruction D-4 was properly refused because it did not correctly state the law. A trial court cannot be put in error for refusing an instruction that misstates the law. ***Willie v. State***, 585 So. 2d 660, 673 (Miss. 1991). The portion of instruction D-4 in error required the State, in order to find him guilty, to prove that Estes, a convicted felon, had not received a pardon for the felony, or had not received a certificate of rehabilitation pursuant to Miss. Code Ann. § 97-37-5(c) (Rev. 1994). ***When a fact is peculiarly within the knowledge of one of the parties so that innocence can be proven with no difficulty, the law will not render it incumbent upon the other side to prove the innocence. Miller v. State***, 105 Miss. 777, 779, 63 So. 269, 269 (1913). This is an affirmative defense which would have placed the burden on Estes to establish. ***Thus, it is not upon the State to prove a negative***. ***Id.***

*Estes*, 782 So. 2d at 1255 (emphasis added).

¶22.    Applying the reasoning found in *Estes*, this assignment of error is without merit.  The

trial court did not err in giving jury instruction S-4.

### III.    *Batson*.

¶23.    On appeal, Hicks argues that the trial court erred in allowing the State to exercise its

peremptory strikes against two African-American jurors.  *See Batson v. Kentucky,* 476 U.S.

79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).  In *Flowers v. State*, 947 So. 2d 910, 917-18

(Miss. 2007), this Court recently stated the standard of review in considering the trial court's

ruling on a *Batson* challenge, stating:

> This Court gives great deference to a trial court's determinations under
> *Batson* because they are based largely on credibility.  *Berry v. State*, 802 So.
> 2d 1033, 1037 (Miss. 2001) (citations omitted).  In reviewing a claim for a
> *Batson* violation, "we will not overrule a trial court on a *Batson* ruling unless
> the record indicates that the ruling was clearly erroneous or against the
> overwhelming weight of the evidence." *Thorson v. State*, 721 So. 2d 590, 593
> (Miss. 1998).
>
> In lodging a *Batson* claim, the party who objects to the peremptory
> strike "must first make a prima facie showing that race was the criteria for the
> exercise of the peremptory strike." *McFarland v. State*, 707 So. 2d 166, 171
> (Miss. 1997) (citing *Batson*, 476 U.S. at 96-97).  A defendant can establish a
> prima facie case of discrimination by showing: (1) that he is a member of
> cognizable racial group; (2) that the prosecutor has exercised peremptory
> challenges to remove from the venire members of the defendant's race; (3) and
> the facts and circumstances raised an inference that the prosecutor used his
> peremptory challenges for the purpose of striking minorities. *Snow v. State*,
> 800 So. 2d 472, 478 (Miss. 2001).  Once a prima facie case has been
> established, the party exercising the challenge has the burden to articulate a
> race-neutral explanation for excluding that potential juror.  *McFarland*, 707
> So. 2d at 171.  As long as discriminatory intent is not inherent in the
> explanation given by the prosecution, "the reason offered will be deemed race
> neutral."  *Randall v. State*, 716 So. 2d 584, 588 (Miss. 1998) (citation
> omitted).  After a race-neutral explanation has been given, "the trial court must
> determine whether the objecting party has met its burden to prove that there

11

has been purposeful discrimination in the exercise of the peremptory," i.e., that the reason given was a pretext for discrimination. *McFarland*, 707 So. 2d at 171. This Court has recognized five indicia of pretext that are relevant when analyzing the race-neutral reasons offered by the proponent of a peremptory strike, specifically:

> (1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; . . . (3) the characteristic cited is unrelated to the facts of the case; (4) lack of record support for the stated reason; and (5) group-based traits.

*Manning v. State*, 765 So. 2d 516, 519 (Miss. 2000) (citations omitted). The burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination. *Berry*, 802 So. 2d at 1042.

¶24. During jury selection, the State exercised five of its peremptory strikes against African-American jurors. Hicks only raises an assignment of error as to two jurors: Juror 12, Curtis L. Magee; and Juror 13, Barbara K. Berry. The State did not exercise peremptory strikes as to Juror 14, Brenda Weathersby, a black female; Juror 15, Willie B. Bridges, a black female; and Juror 11, Perry Brown, a black male. The record states that the composition of the jury was as follows: Juror 1, Candise Smith, white female; Juror 7, Richard Mullins, white male; Juror 9, Michael Clark, white male; Juror 11, Perry Brown, black male; Juror 14, Brenda Weathersby, black female; Juror 15, Willie B. Bridges, black female; Juror 20, Tammy L. Collins, black female; Juror 22, Sherry A. Blackwell, white female; Juror 23, Connie S. Pruitt, white female; Juror 24, Brian M. Hull, black male; Juror 26, Rita C. Holliday, black female; Juror 29, Harry M. Williams, white male; and the alternate juror, Juror 32, Sherry M. Hubbard, white female.

¶25. The trial court required race-neutral reasons for the State's exercise of its peremptory challenges. As to Juror 12, Curtis L. McGee, the record shows that the State provided the following reason for striking the juror:

> He's got a brother-in-law in the penitentiary, and when I was talking to him, he was inattentive to me. But I noticed, when Daniel [defense counsel] was talking to him, he was looking at Daniel and looking at the defendant and grinning.

The defense argued that Juror 12 looked attentive and that the State had not struck Juror 9, a white juror whose uncle was in jail, or Juror 10, a white juror who had a son-in-law who had been in jail.[5] After hearing arguments, the trial court stated:

> [T]hose two coupled together makes it a race[/]gender[-]neutral [reason]. The Supreme Court has said that inattentiveness alone is adequate to strike a juror or is a neutral reason for striking a juror. So I'll allow that one to stand.

¶26. The State also exercised a peremptory strike against Juror 13, Barbara K. Berry. The State provided the following reason for striking Juror 13:

> She stated that she had heard of a Defendant Hicks, and when she was asked would that affect her decision, she was shaking her head no before the question was even gotten out of the questioner's mouth. And she answered too quick to the fact that her – I mean, she was not affected by – or her vote would not be affected by her having heard of Hicks.
>
> Now for the record, 14 is a black female, 15 is a black female, 11 is a black male. So I haven't struck all blacks.

The defense stated that the State did not strike Juror 3, who stated that he knew Hicks, but the defense counsel acknowledged that he did not recall Juror 3 responding too quickly to the questioner.[6] The trial court found:

---

[5] Juror 10 did not serve on the jury.

[6] Juror 3 did not serve on the jury.

13

Well, I think answering too quickly could show a predisposition. So I'll give you the benefit of the doubt on that, Mr. Bowen, and will let the strike stand.

¶27. "The trial judge acts as finder of fact when a ***Batson*** issue arises." ***Lynch v. State***, 877 So. 2d 1254, 1270 (Miss. 2004). "The race neutral explanations must be viewed in the light most favorable to the trial court's findings." ***Walker v. State***, 815 So. 2d 1209, 1214 (Miss. 2002). "This Court has set out a non-exhaustive list of race-neutral reasons for the exercise of peremptory challenges: 'living in a 'high crime' area, ***body language, demeanor***, prosecutor's distrust of the juror, inconsistency between oral responses and juror's card, criminal history of juror or relative, social work and other types of employment, and religious beliefs.'" ***Lynch***, 877 So. 2d at 1271-72 (quoting ***Walker***, 815 So. 2d at 1215) (emphasis added).

¶28. "Inattentiveness alone has been accepted as a race-neutral explanation for the exercise of a peremptory strike." ***Horne v. State***, 825 So. 2d 627, 636 (Miss. 2002) (citing ***Puckett v. State***, 788 So. 2d 752, 760 (Miss. 2001)). While this Court has never held that answering too quickly is a race-neutral reason for striking a juror, the State contends answering too quickly is akin to inattentiveness. That is, the juror is not interested enough to allow the questioner to complete his or her question before answering the question. Here, the trial court found that Juror 13's answering too quickly could indicate a predisposition, and the State was entitled to the benefit of that doubt. *See **Lynch***, 877 So. 2d at 1271-72 (a juror's body language and demeanor are race-neutral reasons); *see also **Walker***, 815 So. 2d at 1215.

¶29. The record demonstrates that the trial court made a sincere, bona fide effort to properly weigh and examine the race-neutral reasons provided by the State. Nothing in the

record reveals that the trial court abused its discretion in finding that the State provided race-neutral reasons for striking Jurors 12 and 13.

## CONCLUSION

¶30.    The judgment of the Circuit Court of Simpson County, Mississippi, is affirmed.

¶31.    **CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE (3) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCE SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL THE APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**