# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00541-COA

JACQUEZE MARSHALL                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                                   APPELLEE

DATE OF JUDGMENT:                05/04/2022
TRIAL JUDGE:                     HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:       BOLIVAR COUNTY CIRCUIT COURT,
                                 SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:               BRENDA FAY MITCHELL
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     REVERSED AND REMANDED - 03/05/2024
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND SMITH, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     Jacqueze Marshall appeals his conviction and sentence for first-degree murder, claiming that the trial court clearly erred in denying the defense's peremptory strikes of three potential jurors and in placing them on the jury. Because we find that the defense provided valid race-neutral reasons for striking two of the jurors under *Batson*,[1] we reverse and remand

---

[1] In *Batson v. Kentucky*, 476 U.S. 79, 98 (1986), the United States Supreme Court established a three-part test for assessing whether a challenged peremptory strike against a potential juror is discriminatory. Our supreme court has held that *Batson* applies to both the prosecution and defense. *Hardison v. State*, 94 So. 3d 1092, 1097 (¶17) (Miss. 2012). For readability, we use the word "juror" to likewise refer to venire members.

for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2.     In July 2021, the deceased body of Jaffarrion Lewis was discovered in the middle of a "dusty gravel road" in Bolivar County by a passing driver. Lewis had been shot six times. Law enforcement learned that the victim had been seen riding in a vehicle with Marshall earlier that day. Marshall was arrested, and he confessed that someone had offered him money to kill Lewis. Marshall had also told a friend that he and Lewis were riding around "smoking weed" and that he shot Lewis with a 9-millimeter gun and a .380-caliber gun (because the other gun ran out of bullets).[2]

¶3.     A Bolivar County grand jury indicted Marshall on September 30, 2021, for first-degree murder with a firearm enhancement.[3] A jury trial was held May 2-4, 2022. After voir dire, the defense exercised its peremptory strikes on Jurors 2, 11, 18, 22, 23, 25, 29, and 33. The State asserted a reverse-*Batson* challenge "because everyone of the [d]efense['s] [s]trike[s] ha[d] been white persons."[4] Defense counsel assured the court that he had "a race-neutral [reason] for every single one of them," to which the trial judge responded, "[L]et's see if [t]he [c]ourt will buy it." Noting there "seem[ed] to be a prevalence strike [sic] of

---

[2] Because the sole issue on appeal concerns a *Batson* challenge during voir dire of potential jurors, only an abbreviated version of the underlying facts is necessary for the purposes of our discussion.

[3] *See* Miss. Code Ann. § 97-3-19(1)(a) (Supp. 2017); Miss. Code Ann. § 97-37-37 (Rev. 2014).

[4] When a *Batson* challenge is raised against the defense, it is called a reverse-*Batson* challenge. *Hardison*, 94 So. 3d at 1097 (¶17); *see also Miles v. State* (*Miles II*), 346 So. 3d 840, 842 (¶3) (Miss. 2022).

[eight] white people by the [d]efense," the trial judge then asked Marshall's attorney to give a "race-neutral reason for all of them." After defense counsel provided reasons for each strike, the trial judge determined that the reasons given for Jurors 2, 11, and 25 were not race-neutral, and he placed them on the jury. The court did not provide the prosecution any opportunity to respond to pretext, nor did the State make any attempt to do so.

¶4. The jury found Marshall guilty. On May 4, 2022, the trial court sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections to run consecutively to any sentences previously imposed. Marshall filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial, alleging the trial judge improperly denied his right to strike Jurors, 2, 11, and 25 from the venire for race-neutral reasons. The court overruled the motion, finding it was "not well taken."

¶5. Appealing his conviction, Marshall requests this Court to remand for a new trial. He argues that the trial court violated *Batson* by "ignor[ing] long accepted race neutral reason[s] in putting [Jurors 2, 11, and 25] back on the jury" and by "fail[ing] to follow the three part test" of *Batson*.

## DISCUSSION

¶6. "In lodging a *Batson* claim, the party who objects to the peremptory strike 'must first make a prima facie showing that race was the criteria for the exercise of the peremptory strike.'" *Flowers v. State*, 947 So. 2d 910, 917 (¶8) (Miss. 2007) (quoting *McFarland v. State*, 707 So. 2d 166, 171 (Miss. 1997)). "If the objecting party makes such a showing, the burden shifts to the striking party to state a race-neutral reason for the strike." *Miles v. State*

(*Miles II*), 346 So. 3d 840, 842 (¶4) (Miss. 2022). "Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race neutral." *H.A.S. Elec. Contractors Inc. v. Hemphill Const. Co.*, 232 So. 3d 117, 133 (¶9) (Miss. 2016). After the party exercising the peremptory strike proffers his or her "race-neutral explanation," the trial court must then "determine if the objecting party met its burden to prove purposeful discrimination in the exercise of the peremptory strike—that the stated reason for the strike was merely a pretext for discrimination." *Miles II*, 346 So. 3d at 842 (¶4).

¶7. Reviewing a *Batson* challenge, we afford the trial court's findings "great deference because they are largely based on credibility." *Pope v. State*, 330 So. 3d 409, 420 (¶37) (Miss. Ct. App. 2021) (quoting *Johnson v. State*, 875 So. 2d 208, 210 (¶4) (Miss. 2004)). "We will not overrule a trial court on a *Batson* ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence." *Id.* (quoting *Miskell v. State*, 270 So. 3d 23, 29 (¶13) (Miss. Ct. App. 2018)).

## I. Prima Facie Case of Discrimination

¶8. Marshall argues that the judge "indicated a predisposition to disallow defense peremptory challenges used on white jurors, before any basis for discrimination could be established." After the State asserted the reverse-*Batson* challenge, the trial judge inquired whether there were a minority of white venirepersons slated for the jury, and the defense counsel offered to submit race-neutral reasons before the court. The trial judge replied:

> THE COURT: Not at this point. I've got to get a basis for it. I have to have the clerk tell me there is a minority. And that's how we go. And a race-neutral reason that a lot of them have not been enunciated. And

| | there are cases that have covered all of the generic ones that are usually given that don't hold water. |
|---|---|
| . . . . | |
| ATTORNEY CARR: | -- I've got a race-neutral for every single one of them, Judge. |
| THE COURT: | I don't see . . . let's see if [t]he [c]ourt will buy it. |
| (Counsel laughs) | |
| THE COURT: | What are you laughing at? That's what [t]he [c]ourt's job is to do. |
| ATTORNEY CARR: | I understand. It's just the way you put it sounded like you're doing this, you know, on a race base reason. |
| THE COURT: | Well that's exactly what I'm saying because that's what the issue is, that's what the issue is, whether or not [you are] race baiting. Sure, of course it is. |

At that point, the clerk confirmed that all the defense's struck jurors were white;[5] so the trial judge concluded that there did "seem to be a prevalence strike of [eight] white people by the [d]efense."[6] The judge then asked defense counsel to provide a "race-neutral reason for all of them." Affording the trial court the applicable deferential standard of review, we do not find any error in the judge's determination that a prima facie case of discrimination existed. *See Henley v. State*, 729 So. 2d 232, 239-40 (¶¶34, 36) (Miss. 1998) (noting whether "the

---

[5] It was later determined that the race of one of the struck jurors (Juror 18) could not be determined.

[6] While a pattern of discriminatory jury strikes is not required, it may be a factor a trial court considers when determining a prima facie showing of discrimination. *H.A.S.*, 232 So. 3d at 126-27 (¶32) (Randolph, P.J., concurring).

totality of the relevant facts give[s] rise to an inference of discriminatory purpose" is a factually intensive inquiry, which "gives rise to a highly deferential standard of review").

¶9. Nevertheless, for the reasons discussed below, we find the trial court clearly erred in rejecting the defense's facially valid race-neutral reasons for striking Jurors 2 and 25 and in placing them on the jury.[7]

## II.    Race-Neutral Reasons

### Juror 2

¶10. Marshall's attorney exercised the defense's first peremptory strike on Juror 2 (a white female), noting, "She was the one that had . . . an Apple Watch on[,] and she was continuing to look at it and looked like she was impatient and didn't want to be there." Finding the defense's reason was "not a viable excuse," the trial judge placed Juror 2 on the jury.

¶11. The Mississippi Supreme Court, however, has accepted "[i]nattentiveness alone . . . as a race-neutral explanation for the exercise of a peremptory strike." *Hicks v. State*, 973 So. 2d 211, 220 (¶28) (Miss. 2007) (quoting *Horne v. State*, 825 So. 2d 627, 636 (¶24) (Miss. 2002));[8] *see also Puckett v. State*, 788 So. 2d 752, 760 (¶18) (Miss. 2001) (recognizing "inattentiveness as a race-neutral explanation for the exercise of peremptory strikes"). In *Pettus v. State*, 295 So. 3d 993, 997-99 (¶¶11, 21) (Miss. Ct. App. 2020), this Court affirmed

---

[7] Although moot based on our disposition, we find no error in the trial court's placing Juror 11 on the jury, as the defense's offered reason for striking Juror 11 was not "want[ing] any older white males on [the] jury"—a reason that obviously was not race-neutral.

[8] In *Hicks*, the State had argued that the struck juror was answering the State's questions "too quickly [and was] akin to inattentiveness," and "the trial court found" that behavior "could indicate a predisposition, and the State was entitled to the benefit of that doubt." *Hicks*, 973 So. 2d at 220 (¶28).

a trial court's finding that the State provided a race-neutral reason in striking a juror for yawning and staring at the wall, "which made the State 'feel like she was not listening or paying attention.'"

¶12.    "[A] striking attorney may follow his or her 'intuition' in deciding whether to strike a particular juror so long as that judgment does not include the assumption—or intuitive judgment—that the juror would be partial to the other side because of the juror's gender or race." *Fields v. State*, 333 So. 3d 566, 570 (¶20) (Miss. 2021).  Thus, "any reason which is not facially violative of equal protection will suffice." *Randall v. State*, 716 So. 2d 584, 588 (¶16) (Miss. 1998).  In this case, the defense's stated concern for striking Juror 2 was simply that she was distracted and "impatient," which is a recognized race-neutral explanation. Therefore, the trial judge erred in concluding the reason was not race-neutral.

**Juror 25**

¶13.    Defense counsel explained that he struck Juror 25 (a white female) because she had "[v]oted guilty before.  That's a race neutral reason."[9]  The trial judge rejected the defense's reasoning for Juror 25, stating,

> I don't count that as a race neutral reason.  I am going to put her back . . . I don't think what they voted before is any type of reason.  I think it's a stupid question to ask.
>
> . . . .
>
> I asked them all if they based a decision on the evidence and the law.  If that's the case, they can vote any way they want to as long as it's true and based on

---

[9] The trial judge had also denied the defense's peremptory strike for Juror 18 for this same reason.  Later, however, he reversed his ruling and allowed the strike after neither the defense attorney nor the clerk could verify whether that juror was white or black.

the evidence and the law.

Marshall contends that the judge erred in his ruling, and we agree.

¶14.     In *Hardison v. State*, 94 So. 3d 1092, 1095 (¶¶1-2) (Miss. 2012), the Mississippi Supreme Court determined that it was error for a trial court to deny the defense's peremptory strike of a juror who had previously served as a juror in a criminal case and had "expressed regret that the jury was unable to reach a verdict," finding this was a valid race-neutral reason. *Cf. White v. State*, 964 So. 2d 1181, 1184 (¶¶6-7) (Miss. Ct. App. 2007) (concluding the trial court did not err in accepting the State's race-neutral reason for striking juror who "had previously served as a juror on a criminal case that failed to return a death sentence, where the prosecution sought the death penalty"); *Harper v. State*, 635 So. 2d 864, 868 (Miss. 1994) (affirming trial court's finding that State's peremptory strike of a juror "who had previously sat on two criminal juries which resulted in one 'not guilty' verdict and one mistrial" constituted "a sufficient racially neutral reason"); *but see Flowers*, 947 So. 2d at 929 (¶45) (declining to extend holding in *Harper* "to cover a situation where . . . a prosecutor struck a juror based on his prior vote in a *civil* case, rather than a *criminal* case" (emphasis added)).

¶15.     Accordingly, we find the trial court's decisions to deny the strikes for what the supreme court recognizes as valid race-neutral explanations were errors.

        III.     *Pretext*

¶16.     As noted, once "the proponent of the strike meets its burden by providing a facially valid race-neutral reason for the strike[,] . . . the burden shifts to the opponent of the strike

to persuade the trial court that the proffered race-neutral reason is a pretext for discrimination." *Miles II*, 346 So. 3d at 843-44 (¶8). The United States Supreme Court, however, "did not articulate a particular means of accomplishing the third step." *Pruitt v. State*, 986 So. 2d 940, 946 (¶20) (Miss. 2008) (citing *Batson*, 476 U.S. at 88-89). The Mississippi Supreme Court declared in *Pruitt*:

> [W]here a trial judge fails to elucidate such a specific explanation for each race-neutral reason given, we will not remand the case for that *Batson*-related purpose alone. This Court is fully capable of balancing the *Batson* factors in cases such as this one. Continued remand of such cases only wastes the trial court's limited resources and acts to further delay justice.

*Id*. at 946-47 (¶21) (quoting *Burnett v. Fulton*, 854 So. 2d 1010, 1016 (¶16) (Miss. 2003)). "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge." *Id*. at 946 (¶20) (quoting *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006)). Here, as Marshall argues, "the trial court did not require any rebuttal by the State, but instead, . . . simply disallowed valid race neutral reasons for [the] defense['s] peremptory challenges." For Juror 2, the trial judge stated that inattentiveness was "not a viable excuse." Regarding Juror 25, the trial judge told the defense that he did not "think what they voted before is any type of reason," and he noted that he had asked each venire member if they could follow the law.

¶17. "No case—in any jurisdiction—has found that a party wishing to exercise a peremptory strike with a race-neutral reason must, even without a challenge from the other party, prove the absence of pretext." *Hardison*, 94 So. 3d at 1100 (¶29). "[T]he ultimate

9

burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995). The State has not offered any specific evidence in its brief demonstrating how the trial court's rejection of the defense's valid reasons for these two jurors indicates a finding on pretext, except to reference the court's ruling to accept the defense's strike for Juror 18. Initially, when defense counsel struck Juror 18 for voting guilty in a prior criminal trial, the trial judge ruled that it was not a race-neutral reason and denied the strike, concluding that the court did not "buy" defense counsel's assertion that he did not "know what her race is." It was only when the circuit court clerk could not establish if Juror 18 "was black or white" from the juror information that the judge allowed the defense's peremptory strike.

¶18. The State argues that the court's rejection of the strike for Juror 25 "while accepting" Juror 18 "necessarily shows that the court engaged in factual findings on pretext." We disagree. There is no indication in the record that the judge ever made it past his determination that the stated reasons for Jurors 2 and 25 were not race-neutral. We therefore cannot accept the State's contention that in rejecting the defense's strikes for Jurors 2 and 25, the judge, in effect, was ruling on pretext.

*IV.* Batson *Remedies*

¶19. As the State acknowledges, the supreme court held in *Hardison* that "the erroneous denial of a peremptory challenge" cannot be deemed harmless "when the objectionable juror actually sits on the panel that convicts the defendant." *Hardison*, 94 So. 3d at 1102 (¶34). The State asks this Court to abandon *Hardison* and find any error harmless. While *Hardison*

was a plurality opinion, it has been consistently followed by our appellate courts to find that harmless error should not be applied in a *Batson* analysis.[10] *See, e.g.*, *Powers v. State*, 371 So. 3d 629, 683 (¶206) (Miss. 2023); *Watts v. State*, 281 So. 3d 873, 879 (¶16) (Miss. Ct. App. 2019); *but see id.* at 882-84 (¶¶35, 40) (Wilson, P.J., concurring in part) (recognizing this Court is bound to follow *Hardison* but alternatively arguing "*Hardison*'s rule of automatic reversal is unwise and ill-considered"). Bound by this precedent, we reject the State's argument. *See Rivera-Guadiana v. State*, 71 So. 3d 1221, 1224 (¶14) (Miss. Ct. App. 2011) (noting this Court "must follow supreme court precedent").

¶20. In the past several years, our appellate courts have alternated between two remedies to redress a trial court's erroneous *Batson* ruling: (1) remand for a new trial or (2) remand for a limited *Batson* hearing confined to the record. In *Hardison*, the State raised a reverse-*Batson* challenge when the defense struck a juror who "had expressed regret that the jury was unable to reach a verdict" after previously serving on a jury in a criminal case. *Hardison*, 94 So. 3d at 1095 (¶¶1-2). "The trial judge required Hardison's counsel to provide a race-neutral reason for the strike." *Id.* at (¶2). Defense counsel reiterated the juror's statement as the reason for the strike, and the trial court found that it "was not a valid race-neutral reason" and denied the peremptory strike. *Id.* Similar to the present case, "Hardison's reason . . . qualifie[d] as race-neutral" and pointed out "that the trial judge never addressed the issue of pretext; he simply held that the stated reason was not race-neutral."

---

[10] Even twelve years before *Hardison*, the supreme court stated in *Manning v. State*, 765 So. 2d 516, 521 (¶15) (Miss. 2000), "that the harmless error standard has no place in the *Batson* analysis."

*Id.* The supreme court held that this failure to proceed to the third step of *Batson* "constituted clear error." *Id.* at 1101-02 (¶¶31, 37).

¶21.     Four years later, in *H.A.S.*, the supreme court ordered only a limited remand for a *Batson* hearing to assess whether the plaintiff's strike of a juror was discriminatory, without discussing the supreme court's deviation from the remedy applied in *Hardison*. *H.A.S.*, 232 So. 3d at 124-25 (¶¶23-27). *H.A.S.* differs slightly from *Hardison*, as the trial court in *H.A.S.* erroneously denied the *Batson* challenge because no established pattern of discrimination had been shown. *Id.* at 124 (¶20). Also, the trial court had not performed step three; so the supreme court noted that the record was unclear as to "whether Hemphill's stated reason for striking [the potential juror] was race neutral or merely a pretext for purposeful discrimination." *Id.* at (¶21).

¶22.     Subsequently, in *Watts*, 281 So. 3d at 879 (¶¶16-17), our Court relied on *Hardison* (without discussing *H.A.S.*) in reversing and remanding for a new trial. In that case, we found the trial court erroneously rejected the defense's valid race-neutral reason (his employment as a banker) for a strike and failed to proceed to the third step of *Batson*—i.e., "analyz[ing] how this particular strike compared to others; that is whether the defense had accepted other venire members that were bank employees." *Id.* at 878-79 (¶15).

¶23.     More recently in *Miles v. State* (*Miles I*), 364 So. 3d 794, 805-07 (¶¶27, 32) (Miss. Ct. App. 2021), *aff'd*, 346 So. 3d 840 (Miss. 2022), though, we found the remedy of a limited remand for a *Batson* hearing was appropriate under those circumstances because the trial court "floated among the steps and was not as precise with its findings as the court in

*Hardison*." Therefore, we could not "adequately ascertain from the record whether the trial court's decision to include the three jurors was based on a finding of pretext for discriminatory intent or on a failure to assess pretext." *Id*. at 805 (¶28).

¶24. The supreme court granted Miles's petition for certiorari review with the specific purpose of addressing the remedy this Court ordered. *Miles II*, 346 So. 3d at 841 (¶1). Affirming this Court's remand "for a limited *Batson* hearing," the supreme court discussed "the discrepancy between" remedies and noted:

> *H.A.S.* held that the remedy for the trial court's failure to follow the three-step *Batson* analysis is to remand for a hearing, "limited to using the record as it existed at the time of the original *Batson* hearing," at which the proper *Batson* analysis must be completed. *H.A.S.*, 232 So. 3d at 125. After the hearing, an appellate court can review the trial court's *Batson* rulings to determine whether they were clearly erroneous or against the overwhelming weight of the evidence. *Strickland* [*v. State*], 980 So. 2d [908,] 916 [(¶11) (Miss. 2008)] (quoting *Smith* [*v. State*], 835 So. 2d [927,] 940 [(¶37) (Miss. 2002)]).

*Miles II*, 346 So. 3d at 846-47 (¶¶16, 18). On the other hand, "[i]f the trial court erroneously denied a peremptory strike[,] . . . a new trial is required because all three challenged individuals served on the jury that convicted" the defendant. *Id*. at 846 (¶16) (citing *Hardison*, 94 So. 3d at 1102).

¶25. Thus, either remedy may be appropriate depending on the facts and record of the case. Here, the trial court clearly erred in rejecting the defense's valid race-neutral reasons for Jurors 2 and 25 and by placing those two jurors on the jury that convicted Marshall. The court made no finding, however, on pretext, nor did the State assert any—either at trial or on appeal. Having carefully reviewed the record and lack of any indication of pretext contained therein (or identified by the State), we find that a limited remand for a *Batson* hearing

13

confined to the record as it exists would not be a satisfactory remedy in this case.

Accordingly, we reverse and remand for a new trial.

¶26.    **REVERSED AND REMANDED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

14